*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *MOSES ALI SEBUNYA,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )   *No. 2:12-cv-67-GZS* |
| | ) |
| *ERIC H. HOLDER, JR.,* | ) |
| *Attorney General,* | ) |
| *U.S. Department of Justice,* | ) |
| | ) |
| *Defendant* | ) |

### *MEMORANDUM DECISION AND ORDER ON MOTION TO AMEND ANSWER*

Defendant Eric H. Holder, Attorney General, U.S. Department of Justice ("DOJ"), seeks leave to file a second amended answer, explicitly asserting a so-called after-acquired evidence defense. *See* Motion for Leave To File Second Amended Answer ("Motion") (ECF No. 38) at 1-5. The plaintiff objects. *See* Plaintiff's Objection to Defendant's Motion for Leave To File Second Amended Answer ("Objection") (ECF No. 48) at 1. Because the defendant was not sufficiently diligent, and the plaintiff would be unfairly prejudiced, I deny the Motion, following oral argument held before me on May 9, 2013.[1]

### I.   Applicable Legal Standards

The First Circuit has explained:

A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . .  As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more

---

[1] I granted the plaintiff's motion for oral argument over the defendant's objection, directing that counsel "be prepared to discuss whether, on the facts set forth by the parties in the context of both the motion to amend and the motion for oral argument, the motion to amend should be granted and, assuming *arguendo* that it is, what additional discovery reasonably is required and on what schedule." ECF No. 55. By email dated May 8, 2013, to which six documents were attached, the plaintiff notified me that, as part of an anticipated motion for summary judgment, he intends to seek sanctions for asserted discovery violations by the defendant. This email and its attachments are not germane to the issue before me, and I have not relied on them in reaching my decision.

> exacting.  Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here).  Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b).  This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.  Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, internal quotation marks, and footnotes omitted).[2]  The defendant filed the instant motion on February 15, 2013, *see* Motion, before the filing of any summary judgment motion but more than four months after the court's October 2, 2012, deadline for amending pleadings, *see* ECF No. 6, and its January 18, 2013, discovery deadline, as extended, for limited purposes only, to February 8, 2013, *see* ECF Nos. 28, 33, and on the day both parties filed notices pursuant to Local Rule 56(h) of their intention to file for summary judgment, *see* ECF Nos. 39, 40.

## II.  Factual Background

The plaintiff filed this civil rights action on February 21, 2012, alleging that he was denied employment in 2008 as a Conciliation Specialist for the New England division of the DOJ's Community Relations Service ("CRS") because of unlawful discrimination, including retaliation for his prior work with the National Association for the Advancement of Colored People ("NAACP").  *See* Complaint and Demand for Jury Trial and Injunctive Relief Sought ("Complaint") (ECF No. 1) ¶¶ 1-2.  He served the complaint on the defendant on May 17, 2012, *see* ECF No. 4, and the defendant filed an answer on July 16, 2012, *see* ECF No. 5.  The

---

[2] The "liberal default rule" is set forth in Federal Rule of Civil Procedure 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Pursuant to that rule, leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

defendant listed, among his affirmative and other defenses, that, "[e]ven assuming any discrimination or retaliation, which Defendant denies, Defendant would have made the same employment decisions at issue absent discrimination or retaliation." *Id.* at 11, ¶ 5.

On July 17, 2012, the court issued a scheduling order providing, *inter alia*, an October 2, 2012, deadline for amending pleadings and a December 18, 2012, discovery deadline. *See* ECF No. 6. The discovery deadline was extended twice. On December 13, 2012, I granted a joint motion of the parties and extended the discovery deadline to January 18, 2013, *see* ECF No. 28, and on January 8, 2013, I granted the defendant's consented-to motion and extended the discovery deadline to February 8, 2013, "solely to allow the plaintiff to take the defendant's FRCP 30(b)(6) deposition and the deposition of Mr. Henderson and each party to respond to the outstanding document requests[,]" ECF No. 33.[3]

The defendant deposed the plaintiff on September 5, 2012. *See* Exh. A (ECF No. 48-1) to Objection. The plaintiff testified that, sometime after 2001, he applied for and was offered a job with the Immigration and Naturalization Service ("INS"), but the offer was withdrawn after a background check revealed that he had been convicted in 2001 for resisting arrest and assault. *See id.* at [3], [5], [8].[4] The defendant received a copy of the transcript of the plaintiff's deposition on September 20, 2012. *See* Opposition/Oral Argument at 3; Exh. A (ECF No. 54-1) thereto.

---

[3] The parties dispute whether the initial discovery deadline extension also was made solely for limited purposes. *Compare, e.g.*, Objection at 2 n.2 with Reply Memorandum in Support of Motion for Leave To File Second Amended Answer ("Reply") (ECF No. 50) at 4 & n.5. The underlying joint motion is ambiguous, *compare* ECF No. 26 at 1 (stating that parties seek extension of discovery deadline to January 18, 2013) *with id.* at 2-3 (stating that parties seek discovery deadline extension for specific purposes). However, I imposed no limits on the scope of discovery in my order. *See* ECF No. 28. As the defendant correctly observes, *see* Defendant's Opposition to Plaintiff's Motion for Oral Argument ("Opposition/Oral Argument") (ECF No. 54) at 2, the court's order controls.

[4] I have cited the ECF-numbered pages of this document rather than its transcript pages because the latter are obscured by the ECF filing stamp.

Following a delay that the defendant attributes to the accommodation of settlement negotiations, he served his first set of discovery requests on the plaintiff on October 3, 2012.  *See* Opposition/Oral Argument at 3; Exh. B (ECF No. 54-2) thereto.[5]  On November 14, 2012, in response to one of those requests, the plaintiff produced a synopsis of a September 7, 2001, Portland Press Herald article reporting that he had been found guilty of assaulting a police officer and resisting arrest during a confrontation over the towing of his car on a Portland street the previous summer.  *See* Opposition/Oral Argument at 3; Exh. C (ECF No. 54-3) thereto.

Sometime in November, the defendant obtained a complete copy of the article, *see* Reply at 2, which reported that, in returning a guilty verdict on the two charges during the plaintiff's nonjury trial, Justice Thomas Humphrey "said he found [the plaintiff's] testimony not credible, choosing instead to accept a version of events given by police and backed up in large part by a half-dozen civilian witnesses[,]" Exh. A (ECF No. 50-1) thereto.  The full version of the article also stated that "[s]everal witnesses offered testimony that [the plaintiff] was yelling and out of control and that the police at the scene were restrained[,]" "[o]ne witness described [the plaintiff] as acting like a 5-year-old child[,]" and Justice Humphrey "said he was disappointed that [the plaintiff] took no responsibility for what happened."  *Id.*

The defendant followed up in late November and early December by seeking information from other DOJ components and federal agencies as to what details of the plaintiff's arrest and convictions would have been uncovered in a preliminary background investigation and produced to the hiring official, former CRS Director Ondray Harris.  *See* Reply at 2.  The defendant also spoke with Harris's counsel regarding what information relating to the plaintiff's arrest and

_____

[5] On October 2, 2012, the deadline for doing so, the defendant filed a consented-to motion to amend his answer in respects other than that now at issue.  *See* ECF No. 14.  The motion was granted the following day, *see* ECF No. 15, and the defendant filed his first amended answer on October 5, 2012, *see* ECF No. 16.

conviction would have compelled Harris to rescind an offer of employment. *See id*. The defendant learned that, on making an offer of employment to the plaintiff, CRS would have requested a temporary background investigation waiver from DOJ's Justice Management Division ("JMD"), the entity that provides clearance and suitability evaluations for DOJ employees. *See* Motion at 1-2. On December 17, 2012, the defendant found out that, (i) in response to the waiver request, JMD would have conducted a limited background check that would have unearthed the results of a 2003 background investigation of the plaintiff performed for INS, (ii) the 2003 investigation raised serious suitability concerns arising from the 2001 convictions and caused INS to rescind a 2002 offer of employment, and (iii) JMD would have shared that information with CRS. *See id*. at 2.

That day, upon concluding that the after-acquired evidence defense was viable, *see id*., the defendant's counsel emailed the plaintiff's counsel, stating that the defendant was "planning on moving to amend its answer to add an additional affirmative defense, specifically that, assuming that Plaintiff's non-selection was the result of discrimination or retaliation under Title VII, after-acquired evidence would have led CRS to terminate [Plaintiff] shortly after he was hired or to decline to hire him in the first place[,]" Exh. A (ECF No. 38-1) thereto. The defendant's counsel added: "Defendant's current affirmative defenses cover that defense, but I want to be sure that the record is clear. Please let me know as soon as you can if you consent to an amendment in that regard as I'd like to get the motion filed this week." *Id*.

On December 18, 2012, the plaintiff's counsel responded: "On your proposed amendment, I consent on the understanding that Plaintiff will be allowed to cover the relevant factual issues to this affirmative defense in full during the 30b6 deposition." *Id*. The defendant's counsel agreed to that request. *See id*.

5

The defendant did not immediately file his motion to amend.  He represents that, between December 19, 2012, and February 8, 2012, his counsel was engaged in a number of time-consuming case-related activities, including reviewing more than 60,000 pages of documents for potential production to the plaintiff, producing 40,000 pages of documents to him, engaging in discovery negotiations and disputes, supplementing initial witness disclosures, negotiating changes to the court's form confidentiality order and drafting a motion for such an order, reviewing the plaintiff's January 26, 2013, document production, preparing witnesses for depositions, and defending his Rule 30(b)(6) witness and another witness, CRS Legal Counsel George Henderson, during depositions that occurred during the week of February 4, 2013.  *See* Motion at 3.

The defendant's January 10, 2013, supplementation of his initial witness disclosures listed, among three witnesses, Dorianna Rice of JMD, who was "likely to have discoverable information regarding the background investigation the United States Department of Justice would have conducted regarding Plaintiff had he been selected for the employment positions at issue in this suit[,]" and Durshawn Seward of CRS, who was "likely to have discoverable information regarding CRS's review of and the impact of the results of the background investigation the United States Department of Justice would have conducted regarding Plaintiff had he been selected for the employment positions at issue in this suit."  Exh. D (ECF No. 48-4) to Objection.

On January 10, 2013, the plaintiff's counsel emailed the defendant's counsel to inquire if he was "amenable to adding the expected testimony of these newly disclosed witnesses to the subject matters in the 30b6 deposition[.]"  Exh. G (ECF No. 48-7) to Objection.  The defendant's counsel replied the following day that the plaintiff's counsel was "welcome to ask Defendant's

30(b)(6) representative about the generally expected scope of testimony of the identified individuals." *Id*.  He added: "The witness will be prepared to give a general summary of the expected testimony of each witness, and we likely will be producing statements from at least one, but Defendant's representative will not be prepared to discuss every detail of each witness's potential testimony, nor will the trial testimony of those witnesses be limited to specific details discussed by Defendant's 30(b)(6) representative." *Id*.

The plaintiff took the deposition of the defendant's 30(b)(6) witness, Durshawn Seward, on February 8, 2013.  *See* Exh. D (ECF No. 50-4) to Reply.  As a courtesy, the defendant's counsel permitted the plaintiff's counsel an additional hour of deposition time, bringing the total to eight hours.  *See id*. at 351; Reply at 5; Fed. R. Civ. P. 30(d)(1).  However, the time elapsed before the plaintiff's counsel inquired about the supplemental witness disclosures made on January 10, 2013, and the defendant's counsel ended the deposition over the plaintiff's counsel's objection.  *See* Objection at 5; Exh. D to Reply at 351-52.

On February 12, 2013, the defendant's counsel provided the plaintiff's counsel, for comment, copies of a draft motion to amend the complaint and a proposed amended complaint. *See* Exh. B (ECF No. 38-2) to Motion.  The latter contained the following new paragraph under the heading Affirmative and Other Defenses:

> Even assuming any discrimination or retaliation, which Defendant denies, Defendant would have rescinded any employment offer prior to Plaintiff's employment, or at the latest prior to the completion of Plaintiff's background investigation, based on evidence of wrongdoing acquired after the offer of employment.

Exh. C (ECF No. 38-3) to Motion at 10, ¶ 4.

On February 14, 2013, the plaintiff's counsel advised the defendant's counsel that his client did not consent to the motion, stating, "Defendant waited until long after the deadline for

new discovery had expired to first identify the witnesses and factual theory it is relying on to prove the after-acquired evidence defense articulated in your motion to amend." Exh. B to Motion. The defendant's counsel responded that his client was "willing to provide an interrogatory answer setting forth additional details of its after-acquired evidence defense" and inquired whether this changed the plaintiff's position. *Id.* The plaintiff's counsel responded the following day that it did not, *see id.*, and the defendant immediately filed this motion, *see* Motion.

On the same day, February 15, 2013, both parties filed notices pursuant to Local Rule 56(h) of their intent to file motions for summary judgment. *See* ECF Nos. 39-40. Following the filing of Rule 56(h) conference memoranda pursuant to the court's Rule 56(h) procedural order, as amended, *see* ECF Nos. 41-42, 47, 49, Judge Singal held a conference with counsel on March 28, 2013, *see* ECF No. 53. He referred the Motion and any related discovery issues to me for resolution and decision and ordered that, absent further order of the court, within 60 days of the decision on the Motion, each side was to notify the court of whether he requested a rescheduled Rule 56(h) conference. *See id.*

## III. Discussion

The defendant seeks leave to amend his answer on the bases that (i) he acted diligently in investigating his after-acquired evidence defense and placing the plaintiff on notice of it, (ii) the plaintiff was not prejudiced because he was afforded opportunities to conduct discovery with respect to the defense, and any injury in failing to do so was self-inflicted, and (iii) the Motion should be granted in the interests of justice in view of the defendant's prompt notification to the plaintiff that he intended to add an after-acquired evidence defense and the defendant's consent to the same, on which the defendant reasonably relied in prioritizing more pressing litigation

tasks before filing his motion to amend.  *See* Motion at 5-9; Reply at 1-7.  He urges the court, in assessing the diligence with which he acted, to focus on December 17, 2012, the date on which he gave actual notice of the defense to the plaintiff, rather than February 15, 2013, the date on which he filed his motion to amend.  *See* Motion at 8-9 (citing, *inter alia, Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp*., 15 F.3d 1222, 1226 (1st Cir. 1994)).[6]

The plaintiff counters that this case is materially indistinguishable from *Madigan v. Webber Hosp. Ass'n*, No. 2:11-cv-94-JAW, 2012 WL 664754 (D. Me. Feb. 15, 2012), in which this court denied a defendant's motion to amend his answer to add an after-acquired evidence defense on account of undue delay and prejudice to the plaintiff.  *See* Objection at 1-2, 7.  He argues that this is so because:

1.      The defendant did not disclose the factual basis of the defense or his witnesses supporting it until January 10, 2013, more than 18 weeks after the plaintiff's deposition revealed the elements of the defense and three weeks after the December 18, 2012, discovery deadline expired.  *See id.* at 1-2 ("In effect, Defendant is using the motion to amend [his] answer as a backdoor for [his] late disclosure on January 10, 2013 of a brand-new, quasi-expert witness to support a factual defense [he] unduly delayed disclosing until after the allowed discovery period.").  While the plaintiff consented on December 17, 2012, to the amendment of the answer,

_____

[6] The defendant argues, in the alternative, that the operative answer, in which he alleges that he "would have made the same employment decisions at issue absent discrimination or retaliation[,]" ECF No. 16 at 10, ¶ 3, suffices to set forth his after-acquired evidence defense in view of the plaintiff's knowledge of (i) the 2001 convictions, (ii) the results of the 2003 background investigation, and (iii) the withdrawal by INS of its offer of employment, *see* Motion at 5 & n.2; Reply at 2 n.1 (citing *Kapche v. Holder*, 677 F.3d 454, 465 (D.C. Cir. 2012)).  Assuming *arguendo* that it is appropriate to apply the *Kapche* rule in this district, I do not find the operative answer sufficient.  As the defendant's counsel acknowledged at oral argument, the operative answer does not make clear that the defense is based on *after-acquired* evidence.  Indeed, the defendant himself did not intend to assert such a defense when both the answer and first amended answer were filed: he states that he did not learn information leading him to believe that he might have an after-acquired evidence defense until November 2012.  *See* Reply at 2-3.  In addition, whereas in *Kapche*, the plaintiff "had notice of the defense, conducted discovery on the issue, and had ample opportunity to respond[,]" *Kapche*, 677 F.3d at 465 (citation and internal punctuation omitted), for the reasons explained below, the plaintiff did not receive meaningful notice of the defense, including its factual basis, in time to permit an adequate opportunity to respond.

he did so only because his counsel understood that the defense would be based on witnesses and evidence already disclosed by the defendant, and he did not learn otherwise until January 10, 2013.  *See id*. at 2-4.

2.      As a result, the plaintiff was denied essential discovery.  *See id*. at 4-6.  Were the court to grant the Motion, he would need to depose Rice, designate opposing witnesses, including possibly an expert witness, and seek further discovery, including the reopening of the depositions of four CRS management officials (Harris, Regional Director Francis Amoroso, who participated in the 2008 hiring process and had personal knowledge of the plaintiff's 2001 convictions long before 2008, Deputy Director Diane Mitchum, and Regional Director Renaldo Rivera).  *See id*. at 3, 5-6, & n.3.

For the reasons that follow, I conclude that the Motion should be denied.

## A.  Moving Party's Diligence

In *Madigan*, one of the defendants sought to amend its answer to add an after-acquired evidence defense predicated on corrective action to which the plaintiff had been subject.  *See Madigan*, 2012 WL 664754, at *2.  There, as here, the defendant was subject to the "good cause" standard in that it filed after the deadline for amending pleadings had expired but before the filing of any motion for summary judgment.  *See id*. at *1.  The defendant argued that it had acted with due diligence in filing its motion on October 28, 2011, because the plaintiff did not produce a copy of the executed corrective action agreement in response to discovery requests and, until October 3, 2011, when a co-defendant shared a copy of the executed agreement, it had no basis for believing that a proposed corrective action agreement had ever been executed or that corrective action had ever been taken.  *See id*. at *6-*7.

10

The court found otherwise, observing that, based on materials produced to the defendant by the plaintiff on September 6, 2011, which revealed the existence of a proposed corrective action agreement with redlined changes by the plaintiff's counsel, the defendant could not reasonably have believed that the plaintiff had successfully challenged the allegations against him. *See id*. at *6-*7. Yet, the defendant made no inquiry about what then occurred, waiting to move to amend until after a co-defendant shared a copy of the executed corrective action agreement and two witnesses thereafter testified about the agreement. *See id*. The court found instructive a passage from *Steir* in which, in response to the plaintiff's argument that she was "frustrated in her efforts to bring a timely Rehabilitation Act claim by the defendants' misleading and incomplete discovery responses and their willful concealment of their financial relationships with the federal government[,]" the First Circuit had clarified:

> [T]he inquiry is not limited to a defendant's conduct: what the plaintiff knew or should have known and what she did or should have done are also relevant to the question of whether justice requires leave to amend under the discretionary Rule 15(a) provision. The failure of [the plaintiff's] counsel to inquire into the memoranda of understanding [between the defendant and several federal agencies] that were mentioned in the answer to the interrogatory is inexplicable.

*Id*. (quoting *Steir*, 383 F.3d at 13-14) (citations and internal quotation marks omitted). This court concluded that the *Madigan* defendant had "fail[ed] to demonstrate good cause for the approximately seven-week delay between its receipt of the initial production from [the plaintiff] and the filing of its motion to amend its answer to include an after-acquired evidence defense." *Id*.

Here, the plaintiff contends that, in a similar vein, the defendant was placed on clear notice of the existence of his after-acquired evidence defense on September 5, 2012, yet delayed disclosing the factual basis for that defense for 18 weeks, until January 10, 2013. *See* Objection at 2.

Assuming *arguendo* that the pivotal date for purposes of assessment of the defendant's diligence is the date on which notice was given, I agree with the plaintiff that the relevant date is January 10, 2013.[7]  However, regardless of whether measurement is taken as of December 17, 2012, January 10, 2013, or February 15, 2013, the defendant did not display due diligence in placing the after-acquired evidence defense in contention.

During the September deposition, the defendant learned not only that the plaintiff had been convicted in 2001 but also that, as a result of those convictions, a federal agency, the INS, had rescinded an offer of employment to the plaintiff.  *See* Exh. A to Objection.  In the defendant's motion papers and/or through his counsel at oral argument, he contended that the deposition did not put him on notice of the possible existence of an after-acquired evidence defense because:

1.     The fact of the misdemeanor convictions, standing alone, would not have disqualified the plaintiff.  *See* Reply at 1-2.  Rather, CRS would have rescinded any job offer upon learning of the plaintiff's conduct during the underlying incident, with one witness having described him as behaving like a five-year-old child, and the sentencing judge's comment that the plaintiff's testimony was not credible.  *See id.*

2.     While the plaintiff testified that INS rescinded its job offer based on the 2001 convictions, INS is a different agency with different security standards, and CRS would not necessarily have done the same thing.

---

[7] While, in *Knapp Shoes*, the First Circuit noted that it had "referr[ed] favorably to the no-prejudice test[,]" pursuant to which "[s]ome courts have excused noncompliance with Rule 8(c) [which requires that affirmative defenses be pled in the answer] if a plaintiff receives notice of an affirmative defense by some means other than the pleadings and is not prejudiced by the omission of the defense from the initial pleading[,]" it did not "decide whether notice and no prejudice would also serve as an excuse in this circuit[.]"  *Knapp Shoes*, 15 F.3d at 1226 (citation and internal quotation marks omitted).

Nonetheless, the discovery of the fact that a different federal agency had rescinded a job offer based on the 2001 convictions, like the discovery of the red-lined corrective action agreement in *Madigan*, sufficed to put the defendant on inquiry notice of the possible existence of an after-acquired evidence defense.  The defendant waited more than two months, until mid- to late November 2012, to make the follow-up inquiries that led him to confirm the viability of the defense.

At oral argument, the defendant's counsel acknowledged that, in a "perfect world," his client would have engaged in aggressive inter-agency discovery in September 2012.  However, he pointed to mitigating circumstances, including that, (i) at the plaintiff's request, the parties focused from August until the end of October 2012 on settlement negotiations rather than discovery, (ii) his client nonetheless did follow up by serving written discovery requests on the plaintiff on October 3, 2012, to which he did not receive a relevant response until November 14, 2012, and (iii) when the response, in the form of the synopsis of the Portland Press Herald article, still did not reveal the material details, his client obtained a copy of the full article that disclosed the material circumstances of the convictions, and then proceeded to make the inter-agency inquiries that led him to conclude that he had a viable after-acquired evidence defense.

That a party is engaged in settlement negotiations, at least in circumstances such as these in which neither side has sought and obtained a stay of deadlines to facilitate such negotiations, does not justify a delay in moving to amend a pleading.  If it did, nearly any set of litigants could claim settlement talks as an excuse, eviscerating the need to exercise due diligence in seeking to amend pleadings.  Moreover, when, on November 14, 2012, the defendant received the Portland Press Herald article synopsis in response to a formal discovery request, he learned nothing more of substance upon reviewing it than he had learned upon taking the plaintiff's deposition in

13

September 2012.  Yet, he was able at that time to undertake the inquiries that led him to conclude that he had a viable after-acquired evidence defense.

Thus, by December 17, 2012, when the defendant sought the plaintiff's consent to add the after-acquired evidence defense, he had already failed to act with due diligence.  He then compounded that problem by neglecting to move to amend his answer for another two months, until February 15, 2013, seven days after the close of discovery (even as finally extended for limited purposes only) and on the deadline for the filing of the parties' Local Rule 56(h) notices of their intent to file for summary judgment.  With respect to that two-month interval, which encompassed the winter holidays, he suggests that he reasonably relied upon the plaintiff's consent to the amendment to prioritize an array of more pressing litigation tasks.  *See* Motion at 6-7 & n.4.  He notes that he had no reason to believe until February 14, 2013, that the plaintiff would not consent as agreed, and he anticipated that the court would grant a consented-to motion to amend.  *See* Reply at 7.

The defendant took a risk in further deferring his filing in reliance on the plaintiff's consent.  As this case exemplifies, parties' private agreements sometimes are the products of misunderstandings.   The defendant questions how the plaintiff reasonably could have misunderstood the nature of the defense given (i) his knowledge that his 2001 convictions led to the rescission of his job offer from INS and (ii) the implausibility of the defense that he claims he assumed the defendant was asserting.  *See* Reply at 3-4; Motion at 4.  He reasons that, in any event, if the plaintiff required further detail before consenting to the amendment, he should have requested it.  *See* Reply at 3 n.4.

Yet, as the plaintiff's counsel rejoined at oral argument, the defendant bore the burden of placing the plaintiff on notice of his after-acquired evidence defense.  *See, e.g., Knapp Shoes*, 15

F.3d at 1226 ("The reason why affirmative defenses under Rule 8(c) must be pled in the answer is to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense.").  In his email of December 17, 2012, the defendant did not explain the factual basis for the defense, and he had not as yet disclosed the existence of evidence or witnesses germane to the defense.  This laid the groundwork for the plaintiff's erroneous assumption that the defense was based on evidence and witnesses already disclosed.[8]

The defendant did not effectively place the plaintiff on notice of the nature of the defense until January 10, 2013, when he provided a brief summary of the expected testimony of Rice and Seward.  By then, only eight days remained of unlimited discovery, more than four months had elapsed since the September 5, 2013, deposition of the plaintiff had put the defendant on inquiry notice of the existence of the after-acquired evidence defense, and nearly one month had elapsed since the defendant had concluded that he had a valid after-acquired evidence defense.  The defendant then waited an additional month to prepare his motion to amend and share it with the plaintiff for comment.[9]

---

[8] In any event, I do not find the plaintiff's assumption unreasonable in the circumstances.  The plaintiff states that he understood the defense to rest on already-disclosed evidence regarding a negative reference that Rivera testified that he provided in October 2008 (subsequent to the August 2008 decision not to hire the plaintiff as a Conciliation Specialist).  *See* Objection at 2-3; Exhs. B (ECF No. 48-2) & C (ECF No. 48-3) thereto.  The defendant finds this assumption "suspect" given the existence of an August 7, 2008, email, cited by the plaintiff in his complaint, in which Harris discusses in detail the substance of the negative reference received from Rivera prior to the hiring decision.  *See* Reply at 3; Exh. B (ECF No. 50-2) thereto; Complaint ¶¶ 56-61.  As weak a defense as this would have been, it was not beyond the pale for the plaintiff to assume that the defendant had decided to preserve it as a "backup defense" to the argument that the Rivera testimony as to the timing of the negative reference was mistaken.  *See* Objection at 2-3.  In addition, the plaintiff explains that the possibility that the defense rested on the 2001 convictions was not at the forefront of his mind because Amoroso, one of the CRS managers who participated in the 2008 hiring process, had assured him in March or early April 2008 that the 2001 convictions would not be an issue.  *See id.* at 3-4.  While it is true that the plaintiff could have, and in hindsight should have, sought clarification as to the basis for the defense before agreeing to the amendment, the defendant, who had the burden of notifying the plaintiff of the defense, bears a greater share of responsibility for the misunderstanding.

[9] I appreciate that the defendant had no reason to believe until February 14, 2013, that the plaintiff had misunderstood the nature of the after-acquired evidence defense or would withhold his consent to the amendment, particularly given that the defendant had granted, with some reasonable limits, all discovery requests made by the plaintiff on account of that defense.  Yet, as discussed above, a party inherently takes a risk in relying on a private (*continued on next page*)

In short, whether one focuses on the period from September 5, 2012, through December 17, 2012, or any period beyond, the defendant failed to exercise the requisite due diligence in filing his motion to amend.  That is fatal to his motion to amend.  *See, e.g., O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004) ("Indifference by the moving party seals off this avenue of relief [grant of a motion to amend a party's pleadings pursuant to the "good cause" standard of Rule 16(b)] irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.") (citation and internal punctuation omitted).

### B.  Prejudice to Non-Movant

Although secondary to the analysis, consideration of the lesser factor of prejudice also weighs in favor of the denial of the motion.  In *Madigan*, the court found that prejudice to the plaintiff counseled in favor of denying the defendant's motion to amend when (i) the plaintiff plausibly argued that the after-acquired evidence defense would necessitate the reopening of the depositions of witnesses, delay trial, and cause a major alteration of his trial tactics, and (ii) the defendant cited no authority for the proposition that the plaintiff "was obliged to proceed with potentially wasteful discovery on the assumption that [the defendant's pending motion to amend its answer] would be granted."  *Madigan*, 2012 WL 664754, at *8-*9.

The plaintiff contends that the same is true here.  *See* Objection at 5-6.  He states that, if the Motion is granted, he will need to depose Rice, designate opposing witnesses, including possibly an expert witness, and seek additional discovery, including the reopening of the depositions of at least four CRS management officials, Amoroso, Harris, Mitchum, and Rivera, about whether they had prior knowledge of the convictions, whether they told the plaintiff that

---

understanding to defer the filing of a motion to amend, and the defendant bears a greater share of responsibility for the implosion of the agreement, particularly where he did not clarify at the outset the basis for the defense.

the convictions would not be an issue with respect to his application for employment in 2008, and whether other candidates for Conciliation Specialist have been hired by CRS despite a criminal record or had their offers rescinded because of a criminal record.  *See id.* at 5-6 & n.3.

The defendant disagrees, arguing that, in view of the plaintiff's consent to the requested amendment and his failure to seek the discovery that he now claims he needs, any prejudice was self-inflicted, effectively waiving further discovery rights.  *See* Reply at 6-7.  The defendant adds that, even if the plaintiff has not waived further discovery, he exaggerates the scope of his needs. *See id.* at 5-6.

I agree with the plaintiff that the allowance of the motion would be unduly prejudicial. He plausibly contends that, to meet the after-acquired evidence defense, he would need to serve written discovery and depose witnesses not only on the question of the impact of the details of his 2001 conviction on any offer he might have received from CRS but also on CRS's practices in similar cases.  *See Madigan*, 2012 WL 664754, at *9 ("When an employer raises [an after-acquired evidence] defense, a court must look to the employer's actual employment practices and not merely the standards articulated in its manuals when evaluating whether the employee in fact would have suffered the adverse employment action.") (citation and internal punctuation omitted).

While it is true, as the defendant points out, *see* Reply at 5, that the plaintiff sought only limited discovery even after he was apprised of the basis of the after-acquired evidence defense on January 10, 2013, he could not then have engaged in full discovery on the issue without further modification of the court's scheduling order.  The discovery deadline was due to expire eight days later, but for a further extension for limited purposes only.  As the plaintiff's counsel noted at oral argument, even had his client promptly served written discovery requests with

respect to the new defense, the defendant's answers would not have been due until past the discovery deadline.   Although the plaintiff had consented on December 18, 2012, to the defendant's amendment of his answer, he had since learned that he had been mistaken as to the basis for the defense, and the defendant had not as of yet filed a motion to amend.  The plaintiff also believed, albeit unreasonably, that discovery had been extended to January 18, 2013, for limited purposes only.   In the circumstances, the plaintiff's failure to seek a further extension of discovery after January 10, 2013, does not warrant a conclusion that any prejudice that he would suffer upon the grant of the Motion to amend would be self-inflicted.[10]

## IV.  Conclusion

For the reasons discussed above, the Motion is **DENIED**.

### NOTICE

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 15th day of May, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[10] At oral argument, the defendant's counsel represented that, had the plaintiff between January 10 and 18, 2013, sought the discovery he now says he requires, the defendant would not have refused it.  Yet, the fact remains that the new discovery would have jeopardized operative scheduling order deadlines.